IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

**KAREN S. COOPER,**
416 Pershing Drive
Silver Spring, Maryland 20910,

      Plaintiff,

v.

                                  Civil Action No. TJS 26 CV 2221

**AMERICAN AIRLINES, INC.,**
1 Skyview Drive
Fort Worth, Texas 76155,

      Defendant.

**COMPLAINT**

Plaintiff Karen S. Cooper hereby files this Complaint against Defendant American Airlines, Inc. ("American Airlines" or "AA"), and alleges as follows:

**INTRODUCTION**

1. This action arises from a bodily injury sustained by Plaintiff Karen S. Cooper on October 26, 2024, while deplaning American Airlines Flight 908 at Miami International Airport. An American Airlines employee or person acting with the permission of American Airlines, acting in the course and scope of his employment, stepped backward without warning into Karen Cooper as she walked through the jetway, slamming her against the jetway wall with sufficient force to fracture her right elbow. Karen Cooper required surgery, extensive physical therapy, and sustained lasting injuries as a direct and proximate result of American Airlines's negligence. This action is brought pursuant to the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (the "Montreal Convention").

**PARTIES**

2. Plaintiff Karen S. Cooper is an adult individual residing at 416 Pershing Drive, Silver Spring, Maryland 20910.

3. Defendant American Airlines, Inc. ("AA") is a Delaware corporation with its principal place of business at 1 Skyview Drive, Fort Worth, Texas 76155. AA is a commercial air carrier engaged in the business of international and domestic air transportation and is subject to the Montreal Convention.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a treaty of the United States—the Montreal Convention—which provides a cause of action for passengers injured in the course of international air carriage. The Montreal Convention preempts all state law claims within its scope and provides the exclusive remedy for bodily injury claims arising from international air travel.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states—Plaintiff is a citizen of Maryland and AA is a citizen of Delaware and Texas—and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, and a substantial part of the events giving rise to this claim—including Plaintiff's purchase of her ticket for her flights on AA, her return home, her medical treatment, and the ongoing effects of her injuries—occurred in this District. Venue is also proper because Defendant conducts substantial business in this District.

7. Personal jurisdiction over AA is proper in this District because AA regularly conducts business in Maryland, operates flights to and from airports in Maryland, and derives substantial revenue from passengers based in Maryland.

## FACTUAL ALLEGATIONS

### A. The Subject Flight

8. On October 25–26, 2024, Plaintiff Karen S. Cooper was a passenger aboard American Airlines Flight 908 ("AA#908"), operated by American Airlines, traveling from Buenos Aires, Argentina to Miami, Florida. This flight constitutes international carriage as defined by the Montreal Convention.

9. AA#908 arrived at Miami International Airport at approximately 6:00 a.m. on October 26, 2024.

10. Karen Cooper was seated in seat 36C. Dean Cooper, her husband, was seated next to her. Plaintiff and her husband were among the last passengers to deplane.

### B. The Incident on the Jetway

11. As Plaintiff and her husband prepared to exit the aircraft onto the jetway, she observed that the right-hand side of the jetway was open and clear for passenger passage. The left-hand side of the jetway had at least five individuals standing there, including at least two unoccupied wheelchairs.

12. Among those individuals standing on the left side of the jetway, approximately five feet or more from the exit door of the aircraft, was a man who had his back turned toward the deplaning Plaintiff and her husband. He appeared to be engaged in conversation with the others on the left side.

2

13. Karen Cooper exited the aircraft ahead of Dean Cooper and proceeded down the center/right-hand side of the jetway in a normal and careful manner.

14. Without warning, the man whose back was turned on the left side of the jetway took a step backward, directly into Karen Cooper's path. He struck Karen Cooper with such force that she was slammed against the right-hand wall of the jetway. The impact was violent enough to leave a dark mark on the right arm of her jacket.

15. Karen Cooper fell to the floor face-down, her body parallel to the right wall of the jetway. She slowly rose from the floor, clutching her right arm and crying from the pain. She confronted the man who had knocked into her, stating, "You pushed me into the wall!" The man responded dismissively, "You walked into me."

16. Dean Cooper, who was directly behind Karen Cooper and witnessed the entire incident, observed that the man took a step backward just as Karen Cooper approached, and that this backward step was the proximate cause of the collision.

17. The man who struck Karen Cooper was subsequently identified as Francisco De Orellana Perez ("Orellana"), an employee of Envoy Air. AA subsequently confirmed to Plaintiff that Orellana was an employee of American Airlines and was on the jetway with AA's permission at the time of the incident.

## C. American Airlines's Failure to Respond

18. Following the incident, Dean Cooper requested that the individuals on the jetway summon an AA supervisor so that Plaintiff could make a formal claim report. Orellana shrugged his shoulders and no one offered assistance or called for help.

19. Dean Cooper walked to the top of the jetway and requested that the gate agent call a supervisor. The gate agent refused and stated that Plaintiff and her husband would need to clear customs before anyone would speak with them. Dean Cooper returned to Karen Cooper, who remained in the jetway in obvious pain.

20. After clearing customs, Plaintiff and her husband returned to the departure terminal for their connecting flight from Miami to Washington, D.C. (AA#218). Dean Cooper continued to request that an AA supervisor speak with them.

21. Eventually, an AA supervisor arrived to speak with Plaintiff and her husband. The AA supervisor said that Orellana was in his employ and that he had spoken with Orellana about the incident. The supervisor asked Plaintiff whether she would like paramedics called. She agreed. The paramedics examined her right arm and, while they did not believe it was broken, provided ice for the injury.

22. Plaintiff and her husband boarded and completed their flight to Washington, D.C. Karen Cooper's arm was severely painful throughout the flight.

## D. Karen Cooper's Injuries and Medical Treatment

23. Upon returning home, Karen Cooper's right arm remained in intense pain and she had severely limited mobility. The arm was visibly black and blue at the elbow and along the bottom of the arm.

3

24. On October 28, 2024, Karen Cooper sought treatment with her physician, Dr. Joe McDonald of Your MD, LLC, who referred her that same day to Dr. Mustafa A. Haque, M.D., an orthopedic surgeon specializing in, among other things, elbow fractures.

25. Dr. Haque examined Karen Cooper and took x-rays on October 28, 2024. He diagnosed her with a "right elbow olecranon fracture with intraarticular extension" and recommended surgical intervention, specifically "open reduction and internal fixation with the plate and screw construct."

26. On October 31, 2024, Karen Cooper underwent the recommended surgery at the Bethesda Chevy Chase Surgery Center as an outpatient. The procedure was performed by Dr. Haque, with Carey Tanner, PA-C assisting, and Dr. Brennan and Marie Mayr, CRNA, providing anesthesia. A metal plate and screws were permanently implanted in Karen Cooper's right elbow.

27. Karen Cooper continued under Dr. Haque's care from October 28, 2024 through September 15, 2025.

28. Dr. Haque prescribed physical therapy for Karen Cooper's right elbow at the Physical Therapy and Pain Management Center, LLC. Karen Cooper attended thirty-two sessions of physical therapy for her right elbow from November 11, 2024 through May 16, 2025.

29. In June 2025, Karen Cooper developed pain in her right shoulder. Dr. Haque diagnosed this as a "frozen shoulder" and documented in his notes that this condition was a direct consequence of the same injury that caused the right elbow fracture. Dr. Haque prescribed an additional course of physical therapy for Karen Cooper's right shoulder. She attended seventeen sessions from June 16, 2025 through August 27, 2025.

30. Dr. Haque has advised Karen Cooper that she may develop post-traumatic arthritis in the future as a result of her injury. He has further noted that she may require additional surgical intervention, including hardware removal or release of a contracture at the elbow, at some future point.

### E. Karen Cooper's Medical Expenses

31. Karen Cooper incurred the following documented medical expenses as a direct result of her injuries:

    a. Your MD, LLC (Dr. McDonald), 10/28–10/29/24: $496.00

    b. Bethesda Chevy Chase Surgery Center, 10/31/24: $26,324.00

    c. Anesthesia at Bethesda Chevy Chase Surgery Center, 10/31/24: $4,017.00

    d. Dr. Mustafa Haque, 10/28/24–9/15/25: $6,240.00

    e. Physical Therapy (right elbow), 11/18/24–5/16/25: $12,022.00

    f. Physical Therapy (right shoulder), 6/16/25–8/27/25: $5,815.00

**TOTAL MEDICAL EXPENSES: $54,914.00**

32. Plaintiff's documented medical expenses were initially adjusted and paid in part by Medicare and in part by Plaintiff and her husband. If Plaintiff is successful in this action, she will be required to repay Medicare.

4

## F. Effect of the Injury on Karen Cooper's Life

33. For the first two months following the incident, Karen Cooper experienced severe pain in her elbow and had significant difficulty sleeping.

34. From month two through the end of the first year, Karen Cooper's elbow remained quite painful and she required the use of a heating pad throughout the day and evening. Pain during physical therapy sessions was especially intense, and the pain extended to her shoulder once the frozen shoulder developed.

35. For the first four months following the incident, Karen Cooper was unable to dress or undress herself independently. She could not put on her socks, tie her shoes, apply the cuff required to shower, or perform other basic hygiene and self-care tasks. Being right-handed, she was unable to write.

36. Karen Cooper was unable to drive for more than three months following the incident.

37. For the first six months following the incident, Karen Cooper was unable to perform any of her normal daily activities, including cooking, cleaning, bicycling, shopping, marital relations, or any activity requiring the use of her right arm.

38. Karen Cooper cried at least once every day for the first six months due to frustration, pain, and the emotional distress of being so severely limited in her activities. She suffered depression and feelings of guilt about being a burden to those around her.

39. Dr. Haque has informed Karen Cooper that a shattered elbow is one of the most painful bone injuries and among those with the longest recovery periods.

## COUNT I: STRICT LIABILITY UNDER THE MONTREAL CONVENTION (Article 17)

40. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

41. The Montreal Convention governs the rights and liabilities of international air carriers and their passengers. AA#908 from Buenos Aires, Argentina to Miami, Florida constitutes "international carriage" as defined by Article 1 of the Montreal Convention.

42. Article 17(1) of the Montreal Convention provides that a carrier is liable for damage sustained in the case of death or bodily injury of a passenger upon the condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

43. The incident described herein constitutes an "accident" within the meaning of Article 17(1) of the Montreal Convention. It was an unexpected and unusual event external to Karen Cooper that occurred in the course of disembarking from AA#908.

44. The incident occurred while Karen Cooper was in the process of disembarking from AA#908, within the jetway, during the operations of disembarkation.

45. Karen Cooper sustained serious bodily injury as a direct result of the accident, including but not limited to: a right elbow olecranon fracture with intraarticular extension, surgery with permanent implantation of a plate and screws, frozen shoulder, extensive physical therapy, pain and suffering, and the prospect of future medical intervention.

46. Pursuant to Article 21(1) of the Montreal Convention, for damages not exceeding 128,821 Special Drawing Rights (SDRs), AA is strictly liable and may not exonerate itself from liability.

47. Pursuant to Article 21(2) of the Montreal Convention, for damages exceeding 128,821 SDRs, AA is liable unless it proves that the damage was not due to negligence or other wrongful act or omission of AA or its employees or agents, or that the damage was solely due to the negligence or other wrongful act or omission of a third party. AA cannot meet this burden.

48. Karen Cooper's total compensatory damages, including medical expenses, pain and suffering, loss of household services, and permanent damages, substantially exceed 128,821 SDRs.

49. As a direct and proximate result of AA's liability under the Montreal Convention, Karen Cooper has suffered and continues to suffer damages in an amount to be proven at trial, but believed to be in excess of $375,000.

## COUNT II: NEGLIGENCE UNDER THE MONTREAL CONVENTION (Tier 2 Damages)

50. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

51. AA owed a duty to Karen Cooper, as a ticketed international passenger, to exercise reasonable care in maintaining a safe and unobstructed passageway through the jetway during the disembarkation process.

52. AA breached this duty by, among other things:

    a. Failing to ensure that Orellana maintained awareness of deplaning passengers and did not obstruct their path;

    b. Failing to establish and enforce protocols to prevent AA employees from standing in or stepping into the path of deplaning passengers;

    c. Failing to properly supervise Orellana's conduct and positioning in the jetway;

    d. Failing to maintain a safe passageway in the jetway for deplaning passengers.

53. AA's negligence was a direct and proximate cause of Karen Cooper's injuries, described herein.

54. As a direct and proximate result of AA's negligence, Karen Cooper has suffered compensatory damages substantially in excess of 128,821 SDRs, entitling her to Tier 2 damages under Article 21(2) of the Montreal Convention.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karen S. Cooper respectfully requests that this Court enter judgment in her favor and against Defendant American Airlines, Inc., and award the following relief:

    a. Compensatory damages for Karen Cooper's medical expenses;

    b. Compensatory damages for Karen Cooper's pain and suffering, both past and future;

    c. Compensatory damages for Karen Cooper's loss of and inability to provide household services on her own behalf;

d.Compensatory damages for Karen Cooper's permanent injuries, including the plate and screws implanted in her elbow, the scar on her arm, and the risk of future arthritis and additional surgeries;

e.Pre-judgment and post-judgment interest as allowed by law;

f.Costs of this action; and

g.Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**KAREN S. COOPER**
416 Pershing Drive
Silver Spring, MD 20910
Telephone: (301) 412-9857
Email: karen.s.cooper.aalitigation@gmail.com

*Pro Se Plaintiff*

Dated: June 4, 2026

7